UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

APRIL M. TRUMBLE,

       Plaintiff,

  v.                               5:11-CV-462

COUNTY OF OSWEGO,

       Defendant.
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

**I.**    **INTRODUCTION**

Plaintiff commenced this action *pro se* asserting claims under the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("EPA"); the New York Equal Pay Act, N.Y. Lab. L. § 194 ("NYEPA"); the Fair Labor Standards Act, 29 U.S.C. § 219 ("FLSA"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"); and the New York Human Rights Law, N.Y. Exec. L. § 296 ("NYHRL"). Defendant moves pursuant to Federal Rules of Civil Procedure 12(c) and 56 to dismiss the action. Although served with the papers in support of the motion, including a *Notification of the Consequences of Failing to Respond to a Summary Judgment Motion*, Plaintiff has failed to oppose the motion. For the reasons that follow, the motion is granted and the action is dismissed.

**II.	STANDARD OF REVIEW**[1]

The Court may grant summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a).  In determining whether to grant summary judgment, the Court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 127 S. Ct. 1769, 1776 (2007).  A dispute is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The nonmoving party must show, by affidavits or other evidence, admissible in form, that there are specific factual issues that can only be resolved at trial. Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).  The nonmoving party cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts," Matsushita., 475 U.S. at 586, or by a factual argument based on "conjecture or surmise." Bryant v. Maffucci, 923 F.2d

---

[1]The matter is decided pursuant to Rule 56, so only this standard is set forth.

979, 982 (2d Cir. 1991).  Likewise, a party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings. Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994).

When a plaintiff has failed to respond to a defendant's motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996).  Rather, the Court must (1) determine what material facts, if any, are undisputed in the record presented on the defendants' motion, and (2) assure itself that, based on those undisputed material facts, the law indeed warrants judgment for the defendants. See id. ("Such a motion may properly be granted only if the facts as to which there is no genuine dispute show that . . . the moving party is entitled to a judgment as a matter of law.") (internal quotation marks and citation omitted).  Where a plaintiff has failed to properly respond to a defendant's Local Rule 7.1 Statement of Material Facts,[2] the facts as set forth in that Statement will be accepted as true[3] to the extent that (1) those facts are supported by the evidence in the record, and (2) the non-moving party, if she is proceeding *pro se*, has been specifically advised of the potential consequences of failing to respond to the movant's motion for summary judgment. See Champion, 76 F.3d at 486; cf. N.D.N.Y. L.R. 56.2 (imposing on movant duty to provide such notice to *pro se* opponent). Here, Defendant has provided Plaintiff with this District's *"Notification of the*

---

[2] See N.D.N.Y. L.R. 7.1(a)(3) ("The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises.").

[3] See N.D.N.Y. L.R. 7.1(a)(3) ("The Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.") (emphasis in original).

3

*Consequences of Failing to Respond to a Summary Judgment Motion*." Where a non-movant fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute. See Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute."). This is because even *pro se* plaintiffs must obey the Court's procedural rules. See McNeil v. United States, 508 U.S. 106, 113 (1993); see also Faretta v. California, 95 S. Ct. 2525, 2541 n. 46 (1975)("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); Edwards v. INS, 59 F.3d 5, 8 (2d Cir. 1995)("While a *pro se* litigant's pleadings must be construed liberally, . . . *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them."); Viscusi v. Proctor & Gamble, 2007 WL 2071546, at * 9 (E.D.N.Y. July 16, 2007)("[P]roceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment."). In this case, because Plaintiff's Complaint is verified, the Court will consider the allegations contained therein to the extent they provide admissible evidence.

III.  **BACKGROUND**

Plaintiff was employed with the County of Oswego ("County") as a Building Maintenance Worker from March 7, 1994 to May 2011. Compt. ¶ 11; Def. L.R. 7.1(a)(3) Stat. of Mat. Facts ("Def. SOMF") ¶ 1. In May 2011, Plaintiff applied for and was hired into the position of Building Maintenance Mechanic. Def. SOMF ¶1. Plaintiff asserts that from

October 20, 1997 until April 2011 she was paid less wages, compensation and other benefits than paid to male coworkers "for substantially the same services." Compl. ¶15. She contends that her differentiation in pay was "based upon sex" and not "a seniority system, merit system, system which measures earnings by quantity or quality of production, or other legitimate basis." Id. ¶ 17. Plaintiff has not pointed to any specific instances, employees, or positions which would support her contention that she was paid less than a male employee performing the same work.

     Moreover, Defendant has demonstrated that at all times during Plaintiff's employment with the County, she was represented by the Civil Service Employees Association, Local 1000 and her pay rate was determined by the terms of the contracts between the County and Union. Def. SOMF ¶ 2. Plaintiff's pay rate was determined by her pay grade as set forth in her Union contract and adjusted for the number of years of service with the County, as also stipulated in her Union Contract. Id. ¶ 3. Her pay rate was not determined by any of her supervisors or the Superintendent of the Buildings and Grounds Department, but was determined by the County Personnel Department after applying the terms of the Union Contract. Id. ¶ 4.

     Plaintiff contends that on January 10, 2000, she complained to the "Superintendant" [*sic*] about receiving less wages, compensation and benefits than her co-workers and that, thereafter, she was "subjected to attempt of termination." Compl. ¶¶ 18-19. Plaintiff also asserts that following her Complaint with the EEOC about receiving less wages, compensation and benefits than her male coworkers, she was "subjected to notice of suit rights, but no advance in pay." Compl. ¶ 20. Plaintiff contends that she has been damaged in that she has received less wages, compensation and benefits than her male

co-workers performing similar work and that she "has been forced to endure discriminatory practices in the workplace." Id. ¶ 22-23.

Defendant has no record of a complaint by Plaintiff to her Supervisor or the Personnel Department about receiving less wages, compensation and/or benefits than her male coworkers on January 10, 2000, although she did apply for another position on this date for which she was not hired. Def. SOMF ¶¶ 7, 10-11.  On March 29, 2001, the Plaintiff was sent a memorandum from her Union President that identified her adjusted start date as November 30, 1992 and set forth the hourly pay rate for her title for the years 1999 through 2004. Id. ¶ 8.  Plaintiff was asked to report any discrepancy in her hourly pay rate, but there are no records showing that Plaintiff made a complaint to her Supervisor or the Personnel Department about receiving less wages, compensation and/or benefits than her male coworkers after March 29, 2001, or any complaint that she had not received a pay rate increase under the collective bargaining agreement. Id. ¶¶ 8-9.

On September 30, 2009, a County Buildings and Grounds employee informed his supervisor that he had helped Plaintiff remove a cabinet from the County's Public Safety Building, and Plaintiff was using the cabinet for personal use. Id. ¶ 13.  On October 1, 2009, Plaintiff admitted to the Buildings and Grounds Superintendent that she took the cabinet from the County's Public Safety Building for her own personal use. Id. ¶14.  All employees of the Buildings and Grounds Department, including Plaintiff, had previously been informed that taking property for personal use from County buildings was strictly prohibited by County policy and that a possible penalty for violating this policy was termination from employment. Id. ¶ 15.

On October 2, 2009, Plaintiff sent the Buildings and Grounds Supervisor a request

for a "Desk Audit" of her job. Id. ¶ 16. The request was forwarded to the County Personnel Department. Id. The request stated,

> I don't believe I'am [*sic*] getting the proper pay, for the job I'am [*sic*] doing [*sic*]. I believe I should be in a higher pay grade, and would like a Desk Audit.

Id.

Plaintiff's request for a Desk Audit did not include a complaint that she was being paid less wages, compensation, or benefits than similarly situated male employees, or that she was discriminated against because of her sex. Id. ¶ 17. In conducting the Desk Audit, the Personnel Department found that due to an apparent oversight, the Plaintiff had not been given a contractual longevity increase of $.23 an hour in 1998. Id. ¶ 18. Plaintiff has received her contractual pay increases since that time, id., and the County corrected Plaintiff's pay roll records and issued her a pay check in the amount of $3,539.52 for the $.23 an hour extra she should have received since 1998. Id. ¶ 19. Plaintiff accepted and cashed the check. Id. ¶ 20.

On October 8, 2009, the Buildings and Grounds Superintendent issued a Notice of Discipline to Plaintiff and a male employee charging them with removing the cabinet from the County Public Safety Building for Plaintiff's personal use. Id. ¶ 21. The proposed penalty for their actions was "Termination" from employment after a Section 75 discipline hearing. Id. After the Notices of Discipline were issued, the County determined that although the cabinet was taken from a County building it was not County property and that the owner of the cabinet wanted it removed from the building. Id. ¶ 23. The Superintendent reduced the proposed penalty from termination of employment to reduction of annual leave for both the Plaintiff and the male employee who helped the Plaintiff improperly remove the cabinet. Id. Plaintiff and the male employee both agreed to

a reduction of annual leave to settle the charges against them and avoid a Section 75 discipline hearing. Id. ¶ 24. Plaintiff was represented by her Union President during the negation of her agreement to accept a reduction in annual leave to avoid the Section 75 hearing and settle the charges against her. Id. ¶ 25.

On January 8, 2010, Plaintiff filed a complaint with the New York Division of Human Rights ("SDHR"), Case Number 10138692, which was concurrently filed with the Equal Employment Opportunity Commission ( "EEOC"), Charge Number 16GB001392. Id. ¶ 26.[4] On October 14, 2010, the SDHR issued a Determination and Order After Investigation finding that there was "NO PROBABLE CAUSE" to determine that the County engaged in any unlawful discriminatory practice against Plaintiff. Id. ¶ 28. The SDHR found that Plaintiff's allegations against the County did not rise to the level of sexual harassment and specifically that she was paid less than male employees with higher seniority and more than male employees with were less senior. Id. ¶ 29. The SDHR also found that the County's seniority system was a legitimate business reason for any alleged pay discrepancies alleged in the Plaintiff's SDHR complaint. Id. ¶ 30. The SDHR also found that Plaintiff was not retaliated against for reporting sexual harassment because the County charged and punished a male employee with Plaintiff for taking the cabinet from a County building. Id. ¶ 31. Finally, the SDHR found that Plaintiff was not denied equal terms, conditions, and privileges of employment because of any discriminatory animus. Id. ¶ 32. On January 20, 2011 the EEOC adopted the SDHR's findings in its Determination and Order After Investigation and issued a Notice of Suit Rights letter. Id. ¶ 33. The

---

[4]The County does not have any record of a separate EEOC complaint being filed on October 28, 2010, as alleged in the Complaint.

Plaintiff has not appealed the SDHR's decision. Id. ¶ 34.

Plaintiff filed her summons and Complaint in this action on April 22, 2011. She asserts causes of action sounding in sex discrimination in the terms of employee compensation, in violation of the EPA, the NYEPA, Title VII, and the NYHRL; and unlawful retaliation for complaining of unequal pay, in violation of the FLSA, Title VII, and the NYHRL.

## IV.  DISCUSSION

### a.  Election of Remedies - New York Human Rights Law Claims

New York Executive Law § 297(9) provides, in pertinent part:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . **unless** such person had filed a complaint hereunder or with any local commission on human rights . . . **provided** that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division.

N.Y. Exec. Law § 297(9)(emphasis added).

"[O]nce a complainant elects the administrative forum by filing a complaint with the [New York State Division of Human Rights ("NYSDHR")], a subsequent judicial action on the same complaint is generally barred unless one of the three exceptions in the statute is applicable." Johnson v. County of Nassau, 411 F. Supp.2d 171, 184 (E.D.N.Y. 2006). In Plaintiffs' cases, the administrative claims filed with the NYSDHR were not dismissed on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled. Thus, pursuant to New York Executive Law § 297(9), Plaintiffs' claims of discrimination and retaliation brought under the New

9

York Human Rights Law are barred. See York v. Ass'n of Bar of City of New York, 286 F.3d 122, 127 (2d Cir. 2002); Ferguson v. New Venture Gear, Inc., 2009 WL 2823892, *5 (N.D.N.Y. Aug. 31,2009); Johnson, 411 F. Supp.2d at 184.  The bar to suit is jurisdictional. Jones v. Onondaga County Res. Recovery Agency, 2011 WL 1298774, *6 (N.D.N.Y. Mar. 31, 2011); Johnson, 411 F. Supp.2d at 184 (citing Moodie v. Federal Reserve Bank of N.Y., 58 F.3d 879, 883-884 (2d Cir. 1995)).   Accordingly, Plaintiff's claims of discrimination and retaliation brought pursuant to the NYSHRL are dismissed for lack of subject matter jurisdiction.

### b. EPA & NYEPA Discrimination Claims

The EPA prohibits employers from discriminating among employees on the basis of sex "by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 209(d)(1).  The elements of a *prima facie* EPA discrimination claim are: (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work in jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions. Lavin–McEleney v. Marist College, 239 F.3d 476, 479 (2d Cir. 2001); see Frasier v. Gen. Elec. Co., 930 F.2d 1004, 1007 (2d Cir. 1991)(citing Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974)). The NYEPA is analyzed under the same standard as the EPA. Pfeiffer v. Lewis County, 308 F. Supp.2d 88, 98 n. 8 (N.D.N.Y. 2004).

Plaintiff has failed to provide evidence that the County paid different wages to

males performing work of equal skill, effort, and responsibility performed under similar working conditions. Her conclusory allegations in this regard are insufficient. Moreover, the EPA excepts from its provisions situations "where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). The NYEPA has virtually identical exceptions. See NY Lab. L. § 194(1). "Once the employer proves that the wage disparity is justified by one of the EPA's four affirmative defenses, the plaintiff may counter the employer's affirmative defense by producing evidence that the reasons the defendant seeks to advance are actually a pretext for sex discrimination." Ryduchowski v. Port Authority of New York and New Jersey, 203 F.3d 135, 142 (2d Cir. 2000)(internal quotation marks and citations omitted).

     The County has provided unrefuted evidence that any differential in compensation between males and females performing similar work was the result of the terms of the applicable union contract and an employee's seniority, and was not based on an employee's sex. While there was one instance when the County learned that it had miscalculated Plaintiff's pay, the error was rectified before the instant action was started and Plaintiff accepted the employer's lump sum payment to account for past lost wages. There is nothing suggesting that this incident was on account of Plaintiff's gender. More importantly, Plaintiff has failed to rebut the evidence establishing that any difference in compensation of males and females performing similar work was the result of a differential based on factors other than sex. On this record, no reasonable fact finder could find for Plaintiff on her EPA and NYEPA discrimination claims. Consequently, these claims are

11

dismissed pursuant to Rule 56.

### c. FLSA Retaliation Claim

The FLSA's anti-retaliation provision makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3).[5]  To establish a FLSA retaliation claim, Plaintiff must show: "(1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." Torres v. Gristede's Operating Corp., 628 F. Supp.2d 447, 472 (S.D.N.Y. 2008)(citation and internal quotation omitted).

Plaintiff has failed to provide sufficient evidence establishing that she engaged in protected activity by complaining to her employer of unequal pay on the basis of her sex. To the extent that Plaintiff's request for a Desk Audit could be considered such a complaint, she has failed to demonstrate that she was discharged or retaliated against in any fashion because of this complaint.  The evidence of an adverse employment action in the form of discipline imposed by the employer was the result of Plaintiff's admitted conduct in violating the employer's work rules.  To the extent that Plaintiff contends that she was "subjected to notice of suit rights, but no advance in pay" following her complaint to the EEOC,  the conclusory allegation is insufficient to create a question of material fact

---

[5]The EPA is part of the FLSA.

12

on this issue. As indicated above, all pay increases were determined by the terms of the collective bargaining agreement and Plaintiff has failed to present evidence that the employer acted in contravention of this agreement in determining her pay. Moreover, the evidence reveals that Plaintiff applied for and was hired into another position after she complained to the EEOC (and after she started this lawsuit). The receipt of a right to sue letter is not the result of any action by the employer, and thus does not constitute an adverse employment action. Plaintiff's unsupported assertions of retaliation in the terms and conditions of her employment are insufficient to create a question of material fact on this issue. Thus, the FLSA retaliation claim is dismissed pursuant to Rule 56.

### d.   Title VII Claims

#### 1.   Discrimination

The four affirmative defenses to an allegation of sex-based unequal pay under the EPA apply to gender-based unequal pay claims made under Title VII. See 42 U.S.C. 2000e-2(h). For the reasons discussed above, based upon the record on this motion, no reasonable fact finder could find in favor of Plaintiff on her Title VII discrimination claim. Accordingly, the Title VII discrimination claim is dismissed pursuant to Rule 56.

#### 2.   Retaliation

When a court is presented with the task of analyzing a claim of retaliation brought pursuant to Title VII, the claim is subject to the burden shifting analysis established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–804 (1973). Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010). Under the McDonnell Douglas analysis, a plaintiff must first establish a *prima facie* case of retaliation. Collins v. New York City

Transit Authority, 305 F.3d 113, 118 (2d Cir. 2002).  If Plaintiff establishes a *prima facie* case of Title VII retaliation, the burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Holcomb v. Iona Coll., 521 F.3d 130, 138 (2d Cir. 2008).  If the employer proffers a legitimate, nondiscriminatory reason for the challenged employment action, "the presumption raised by the *prima facie* case is rebutted, and drops from the case." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).  The burden shifts back to Plaintiff who "then has the opportunity to demonstrate 'that the proffered reason was not the true reason for the employment decision,' and that [unlawful retaliation] was." Fisher v. Vassar College, 114 F.3d 1332, 1336 (2d Cir. 1997)(en banc), cert. denied, 522 U.S. 1075 (1998).  The ultimate burden of persuasion remains always with Plaintiff. St. Mary's Honor Ctr., 509 U.S. at 507, 511.  In determining whether Plaintiff can satisfy this ultimate burden, the Court must examine the entire record and apply "a case-by-case approach." Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000).

To make out a *prima facie* case for retaliation under Title VII, Plaintiff must establish:

> (1) that she engaged in protected activity under [Title VII], (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse employment action.

Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010)(citing Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006)).

For the reasons discussed above, and assuming *arguendo* that Plaintiff engaged in

14

protected conduct, there is no evidence upon which a reasonable fact finder could conclude that any adverse action taken by the employer was causally related to such conduct. Moreover, and assuming *arguendo* that Plaintiff could establish a *prima facie* case, the employer has articulated the legitimate, non-discriminatory reason for its actions, namely, that any discipline was precipitated by Plaintiff's admitted conduct in violation of employment policies, that any discrepancy in her pay was the result of an oversight that was promptly corrected when discovered, that Plaintiff was paid at all times in accordance with the terms of the applicable collective bargaining agreement,[6] and that Plaintiff was hired into another position for which she applied. This satisfies the employer's burden. Plaintiff has failed to present evidence upon which a reasonable fact finder could conclude that the proffered reason was not the true reason for the employment decisions and that unlawful retaliation was, or that a retaliatory motive prompted the employer in any of its actions. Accordingly, Defendant is entitled to summary judgment on the Title VII retaliation claim.

## V.   CONCLUSION

For the reasons discussed above, Defendant's motion for summary judgment [dkt. # 12] is **GRANTED** and this action is **DISMISSED** in its entirety.

**IT IS SO ORDERED.**

Dated:   January 6, 2012

Thomas J. McAvoy
Senior, U.S. District Judge

---

[6] Except for the one error that was rectified.